IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFORCE GLOBAL, INC., | ) Case No. 09-1984 SC |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANT'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| v. | ) |
| | ) |
| BANK OF AMERICA, N.A., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## I.   INTRODUCTION

Now before the Court is a Motion for Summary Judgment, or Alternative Partial Summary Judgment, filed by Bank of America, N.A. ("Defendant" or "Bank of America").  Docket No. 31 ("Motion").  Plaintiff eForce Global, Inc. ("Plaintiff" or "eForce") filed an Opposition, and Bank of America filed a Reply. Docket Nos. 36, 41.  Pursuant to Local Civil Rule 7-1(b), the Court finds the Motion is suitable for determination without oral argument.  For the reasons stated below, Defendant's Motion is GRANTED.

## II.   BACKGROUND

On May 6, 2009, Plaintiff filed a Complaint against Bank of America.  Docket No. 1 ("Compl.").  Plaintiff is an information technology services company that provides enterprise solutions to

United States District Court
For the Northern District of California

1    its clients.  Id. ¶ 1.  eForce developed the Integrated Treasury

2    Operations System ("ITOPS"), a Web-based automated and integrated

3    cash-management system.  Id. ¶ 7.  In 2007, eForce entered into

4    negotiations with the Regents of the University of California ("the

5    University") to implement and support ITOPS at the University.  Id.

6    ¶ 8.  On January 7, 2008, eForce and the University signed a

7    written contract whereby eForce agreed to furnish ITOPS and, in

8    exchange, the University agreed to pay eForce $100,000 for the

9    software, a fee not to exceed $600,000 for the deployment of the

10   system, and a monthly subscription fee.  See Reidy Decl. Ex. B

11   ("Ravindra Pande Dep.") Ex. 4 ("UC Banking Services Agreement") at

12   EFO 42894-42903.[1]

13       Around July 2007, the University told eForce that ITOPS would

14   have to be integrated with Bank of America's system so that the

15   University and Bank of America could conduct banking operations

16   through ITOPS.  Compl. ¶ 9; Ravindra Pande Dep. at 44:7-13.  On

17   July 27, 2007, representatives of eForce, the University, and Bank

18   of America participated in a telephone call.  Compl. ¶ 12; Ravindra

19   Pande Dep. at 78:12-79:23.  Participants on the conference call

20   included Ravindra Pande and Sujith Nair ("Nair") of eForce, Richard

21   Powell ("Powell") of the University, and Joseph Simas ("Simas"),

22   Cynthia Weinthaler ("Weinthaler"), and Susan Colles ("Colles") of

23   Bank of America.  Ravindra Pande Dep. at 79:4-9; Ravindra Pande

24

25

26

27   [1] David Reidy ("Reidy"), an associate at Reed Smith LLP, attorneys
     for Defendant Bank of America, filed a Declaration in Support of
28   the Motion.  Docket No. 32.

2

United States District Court
For the Northern District of California

1    Decl. ¶¶ 9-10; Nair Decl. ¶¶ 15-16.[2]

2         Ravindra Pande is a Project Manager and Enterprise Architect

3    at eForce, and he held that position in 2007.   Ravindra Pande Decl.

4    ¶ 2.   According to Ravindra Pande, "the purpose of the call was

5    largely for Bank of America to describe their capabilities with

6    respect to bulk payment interfaces."   Ravindra Pande Dep. at 79:18-

7    20.   Bank of America's representations to eForce during the

8    telephone call form the basis for eForce's three causes of action

9    for (1) Intentional Interference with Contractual Relations; (2)

10   Breach of Oral Contract; and (3) Breach of the Covenant of Good

11   Faith and Fair Dealing.   See Compl. ¶¶ 20-41.

12

13   **III.  LEGAL STANDARD**

14        Entry of summary judgment is proper "if the pleadings, the

15   discovery and disclosure materials on file, and any affidavits

16   show that there is no genuine issue as to any material fact and

17   that the movant is entitled to judgment as a matter of law."   Fed.

18   R. Civ. P. 56(c).   If the party moving for summary judgment does

19   not have the ultimate burden of persuasion, then that party must

20   produce evidence negating an essential element of the non-moving

21   party's claims or showing that the non-moving party does not have

22   enough evidence of an essential element to carry its ultimate

23   burden of persuasion at trial.   Nissan Fire & Marine Ins. Co. v.

24   Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).   Summary judgment

25   should be granted where the evidence is such that it would require

26   a directed verdict for the moving party.   Anderson v. Liberty

27   _____

28   [2] Ravindra Pande and Sujith Nair ("Nair"), employees of eForce,
     submitted declarations in support of eForce's Opposition.   Docket
     Nos. 36-4, 36-7.

United States District Court
For the Northern District of California

1  Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56(c) mandates

2  the entry of summary judgment . . . against a party who fails to

3  make a showing sufficient to establish the existence of an element

4  essential to that party's case, and on which that party will bear

5  the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S.

6  317, 322 (1986).  "The evidence of the non-movant is to be

7  believed, and all justifiable inferences are to be drawn in his

8  favor."  Anderson, 477 U.S. at 255.

9

10  **IV.  DISCUSSION**

11       **A.    Evidentiary Objections**

12            **1.    eForce Objections**

13       eForce filed objections to the evidence Bank of America

14  submitted in support of its Motion.  Docket No. 35 ("eForce

15  Objections").  Bank of America responded to the objections.  Docket

16  No. 44 ("Resp. to eForce Objections").

17       eForce contends that Bank of America may not use the

18  deposition testimony of its own employees unless they are outside

19  the state or otherwise unavailable to testify.  eForce Objections

20  at 2.  This contention is simply incorrect, and the cases cited by

21  eForce do not support it.  In Garcia-Martinez v. City and County of

22  Denver, the Tenth Circuit addressed the admissibility at trial of

23  the deposition testimony of a party who had voluntarily left the

24  country.  392 F.3d 1187, 1190-91 (10th Cir. 2004).  In Paz v.

25  Wauconda Healthcare and Rehabilitation Centre, LLC, the Seventh

26  Circuit noted that a plaintiff may defeat summary judgment with his

27  or her own deposition testimony.  464 F.3d 659, 664-65 (7th Cir.

28  2006).  Neither case supports the novel evidentiary rule proposed

4

United States District Court
For the Northern District of California

1    by eForce.   It is elementary that a party moving for summary

2    judgment may rely on deposition testimony.   <u>Celotex</u>, 477 U.S. at

3    323.   The Court OVERRULES eForce's objections to the deposition

4    testimony of Bank of America employees Simas, Heidi Hawthorne

5    ("Hawthorne"), Doris Chu ("Chu"), and Sharon Midkiff ("Midkiff").

6        Although Plaintiff initially objected to the authenticity of

7    documents Bank of America submitted in support of its Motion,

8    Plaintiff subsequently withdrew its authenticity objections.   <u>See</u>

9    Overend Decl. ¶ 2, Ex. A ("May 25, 2010 Email").[3]   Hence, the Court

10   does not need to rule on these objections.   Plaintiff has also

11   withdrawn its request for a Rule 56(f) continuance, and therefore

12   the Court does not respond to that request.   <u>See</u> Opp'n at 3-6;

13   Docket No. 46 ("June 4, 2010 Letter").

14       eForce objects on the basis that Bank of America often "mis-

15   cites" deposition testimony.   eForce Objections at 4-5.   These

16   objections do not call into question the admissibility of Bank of

17   America's evidence, but instead question Bank of America's

18   description or characterization of the evidence.   The Court bases

19   its decisions on what the evidence shows, not on how a party has

20   characterized the evidence.   As such, the Court OVERRULES eForce's

21   objections based on alleged inaccurate citations.   Having reviewed

22   the deposition testimony referred to in Attachment A to eForce's

23   Objections, the Court also OVERRULES the objections based on a

24   purported lack of personal knowledge, the hearsay rule,

25   inadmissible opinion testimony, and a lack of foundation.

26

27   [3] William R. Overend ("Overend"), partner at Reed Smith LLP,
     attorneys for Defendant Bank of America, filed a Declaration in
28   Support of Bank of America's Responses to Plaintiff's Evidentiary
     Objections.   Docket No. 45.

<div style="float:left; writing-mode:vertical-lr;">

**United States District Court**
For the Northern District of California

</div>

1

2.   **Bank of America Objections**

2   Bank of America objects to eForce's Opposition on the basis

3   that there is no evidence to support many of the assertions in the

4   Opposition brief.  Docket No. 43 ("Def.'s Objections") at 2-8.  As

5   stated above, the Court relies on what the evidence shows, not on

6   how a party describes or characterizes the evidence.  Hence, the

7   Court OVERRULES Bank of America's objections to statements in

8   eForce's Opposition brief, but the Court makes clear that it always

9   bases its determinations on what the evidence shows, not on how a

10   party has characterized that evidence in its pleadings.

11   Bank of America objects to references to an agreement between

12   eForce and the Bank in the P.K. Pande Declaration.  _Id._ at 9-10.

13   The declarant states he was not part of the discussions that

14   created this agreement; instead he obtained his information

15   regarding an agreement from Nair and Ravindra Pande, other eForce

16   employees.  _See_ P.K. Pande Decl. ¶ 14.[4]  Hence, statements in his

17   declaration concerning an agreement between eForce and Bank of

18   America are hearsay.  The Court SUSTAINS Bank of America's

19   objections to those statements, and GRANTS Defendant's Motion to

20   Strike those statements.  The Court OVERRULES Bank of America's

21   other objections to statements in the P.K. Pande Declaration.

22   The Court OVERRULES Bank of America's objections to statements

23   in the Ravindra Pande Declaration and the Nair Declaration.  The

24   Court also OVERRULES Bank of America's objections to statements in

25

26

27

28

---

[4] P.K. Pande, Chief Operating Officer ("CEO") of eForce, filed a
Declaration in Support of eForce's Opposition.  Docket No. 36-8.

1  the Martin Kresse Declaration,[5] but finds that the statements have
2  no impact upon Bank of America's Motion because eForce has
3  withdrawn its request for a Rule 56(f) continuance.  See June 4,
4  2010 Letter.

5      **B.**  **Breach of Oral Contract**

6      "A cause of action for breach of contract is comprised of the
7  following elements: (1) the contract, (2) plaintiff's performance
8  or excuse for nonperformance, (3) defendant's breach, and (4) the
9  resulting damages to plaintiff." Careau & Co. v. Sec. Pac. Bus.
10 Credit, Inc., 272 Cal. Rptr. 387, 395 (Ct. App. 1990).  A contract
11 requires consenting parties, and their consent must be free,
12 mutual, and communicated by each to the other.  Cal. Civ. Code §§
13 1550, 1565.  Consent is not mutual unless the parties all agree
14 upon the same thing in the same sense.  Id. § 1580.  "If there is
15 no evidence establishing a manifestation of assent to the 'same
16 thing' by both parties, then there is no mutual consent to contract
17 and no contract formation." Bustamante v. Intuit, Inc., 141 Cal.
18 App. 4th 199, 208 (Ct. App. 2006) (quoting Weddington Prods., Inc.
19 v. Flick, 60 Cal. App. 4th 793, 811 (Ct. App. 1998).  To form a
20 contract, the parties must reach mutual assent or consent on
21 definite or complete terms.  Merced County Sheriff's Employees'
22 Ass'n v. Merced County, 188 Cal. App. 3d 662, 670 (Ct. App. 1987);
23 McClintock v. Robinson, 18 Cal. App. 2d 577, 582 (Ct. App. 1937).

24     Here, Plaintiff's Complaint alleges that Bank of America
25 breached an oral contract entered into on or about July 27, 2007.
26 Compl. ¶¶ 30-31.  Plaintiff alleges that "Bank of America agreed to

27

---
28 [5] Martin H. Kresse, attorney of record for eForce since February 2, 2010, filed a Declaration in Support of eForce's Opposition. Docket No. 36-1.

provide support for UCOP Payment Types via its MX Message Interface." Id. ¶ 30.[6]  Plaintiff alleges that:

> Bank of America further agreed to the following timeline for the implementation and testing of ITOPS's integration into the MX Message Interface: (1) eForce would complete the integration of ITOPS with Bank of America's MX Message Interface in Fourth Quarter 2007; (2) eForce would begin testing ITOPS's integration with Bank of America's MX Message Interface in or about September 2007; (3) Bank of America would provide a test environment for ITOPS during Fourth Quarter 2007; (4) Bank of America would begin providing support for the UCOP Payment Types via its MX Message Interface during Fourth Quarter 2007.

Compl. ¶ 31.

Bank of America presents evidence showing that mutual consent regarding the MX Message Interface was not reached during the July 27, 2007 telephone call, and eForce has failed to show otherwise. eForce did not commit to using the XML format during the July 27, 2007 conference call.  Instead, on that date, the parties merely discussed options for how ITOPS could be integrated with Bank of America's system.

On July 27, 2007, the parties discussed different types of file formats that Bank of America used to send payment origination instructions.  Reidy Decl. Ex. A ("Simas Dep.") at 15:1-24, 62:6-24, 64:14-18.  The file formats discussed included the Bank of America flat file ("BAFF") and the XML format.  Ravindra Pande Dep. at 79:21-80:11; Ravindra Pande Decl. ¶ 13; Simas Dep. at 15:1-7, 15-24.  While BAFF is a proprietary Bank of America format, the parties also discussed ISO 20022, an XML-based standard.  Simas

---

[6] eForce refers to the University as "UCOP," which is an abbreviation for the University of California Office of the President.

8

Dep. at 22:2-4; Ravindra Pande Dep. at 81:25-82:6; Ravindra Pande Decl. ¶ 13.  These were file formats that the University could use to send bulk payments through Bank of America's system using the new ITOPS software.  Ravindra Pande Dep. at 80:20-82:6.

During this call, a Bank of America representative "talked about how [the XML standard] was going into production and how they were using pilot customers right now, and it would be in production in October."  Id. at 82:10-21.  Ravindra Pande's understanding was that the XML format "was in testing with . . . [Bank of America's] pilot customers, and it was scheduled for production in October."  Id. at 82:24-83:1.  Indeed, this case hinges on Bank of America's representation during the call that the XML payment interface would be in production in October 2007.  Ravindra Pande Decl. ¶¶ 15-17; Nair Decl. ¶ 17.  eForce alleges that it relied on that representation, and that Bank of America's failure to meet that deadline forced eForce to maintain employees on the ITOPS project for longer than anticipated.  P.K. Pande Decl. ¶ 20.

On this motion for summary judgment, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in eForce's favor.  Anderson, 477 U.S. at 255.  The Court therefore assumes the truth of eForce's claim that Bank of America represented during the July 27 call that the XML format would be in production in October 2007.  Assuming the truth of this assertion, the evidence does not show that an oral contract was formed between eForce and Bank of America on that date.

Ravindra Pande testified that, during the July 27, 2007 call, Bank of America provided eForce with information concerning file formats for a bulk payment interface, Ravindra Pande Dep. at 81:16-

**United States District Court**
For the Northern District of California

83:1, and eForce requested follow-up information and documentation on the XML format, id. at 86:2-23.  eForce did not decide during the call to go with the XML format.  Id. at 86:24-87:8.  Instead, eForce requested documentation from Bank of America so that eForce could understand the XML format.  Id.  Hence, eForce did not commit to the XML format on July 27, 2007.

In his declaration, Ravindra Pande does not dispute that eForce did not commit to the XML format during the call.  He declares that he "told the Bank on the July 27th conference call that we would likely utilize the Bank's XML interface rather than their BAFF interface."  Ravindra Pande Decl. ¶ 19 (emphasis added). On July 28, 2007, he told other eForce employees that eForce would be utilizing the XML payment interface.  Id. ¶ 22.  However, eForce first notified Bank of America that it intended to use the XML format in an email dated August 10, 2007.  See Ravindra Pande Dep. Ex. 6 ("Aug. 10, 2007 Email").  The email states "[w]e are planning implement [sic] the XML interface based on ISO 20022."  Id. at EFO 08882.  eForce admits this email is the first time eForce notified Bank of America that it intended to use the XML file format. Ravindra Pande Dep. at 99:24-100:2.

If eForce did not commit to using the XML format during the conference call, then it is impossible for eForce and Bank of America to have entered into an oral contract regarding the XML format at that time.  eForce alleges that "Bank of America agreed to provide support for UCOP Payment Types via its MX Message Interface," and that Bank of America and eForce agreed to a "timeline for the implementation and testing of ITOPS's integration into the MX Message Interface."  Compl. ¶¶ 30-31.  In its

Opposition, eForce asserts that "[d]uring the call an agreement was reached between the Bank and eForce that if the Bank's XML interface was used for the UCOP payment types that eForce could use the Bank's October 2007 XML product release for the UCOP project so that eForce could complete its testing and integration during Q4 2007 with this release." Opp'n at 11.

There is no evidence to support these allegations of an agreement. A contract concerning the XML format could not have been formed during the conference call because eForce did not commit to using the XML format at that time, and eForce first notified Bank of America of its intention to use that format on August 10, 2007. Ravindra Pande Dep. at 86:24-87:8, 99:24-100:2; Aug. 10, 2007 Email at EFO 08882. Contract formation requires a manifestation of assent to the same thing by both parties. Bustamante, 141 Cal. App. 4th at 208. Therefore, even if Bank of America misrepresented that the XML format would be in production in October 2007, this statement could not have given rise to a contract. The evidence indicates that, during the call, the parties to this lawsuit were merely discussing options for how ITOPS could be integrated into Bank of America system. See Ravindra Pande Dep. at 81:16-87:8; Simas Dep. at 62:6-24, 64:14-18; Ravindra Pande Decl. ¶¶ 11-19. There is simply no evidence of mutual consent during the July 27, 2007 conference call.

Nor do the emails subsequent to the July 27 call give rise to a contract between eForce and Bank of America. On August 1, 2007, Weinthaler, Vice President of Treasury Management Services at Bank of America, sent an email to Powell, Senior Banking Manager at the University of California, containing hyperlinks and information

**United States District Court**
For the Northern District of California

regarding the XML format.  Ravindra Pande Dep. Ex. 6 ("Emails") at EFO 08884-86.  Powell forwarded the information to Ravindra Pande on August 2, 2007.  Id. at 08884.

On August 10, 2007, Ravindra Pande responded in an email sent to representatives of both the University and Bank of America.  Aug. 10, 2007 Email at 08882-84.  The email states "[w]e are planning implement [sic] the XML interface based on ISO 20022. . . . We are planning to have our integration completed during calendar Q4 of this year and expect to enter testing in the September time frame contingent on the lead time required for establishing UCOP in a test environment."  Id. at 08882.  The email continues:

> Our understanding of the BofA support for ISO 20022 is
> 1. Support for domestic and international Wires, ACHs and Drafts will be available using the new MX Message Interface . . . .
> 2. B Of A will begin production support for these MX Messages/ISO 20022 with their initial set of customer [sic] in the October 2007 timeframe.

Id.  The email also asks Bank of America to provide eForce "with any documentation relating to the implementation, testing and connectivity to the new ISO 20022 when it is available," and it also seeks advice on the process for accessing the Bank of America test environment.  Id. at 08883.

Simas, from Bank of America, responded on August 29, 2007.  Ravindra Pande Dep. Ex. 7 ("Aug. 29, 2007 Email") at EFO 08598-08605.  He notes that Bank of America's "documentation for the XML process is still being established."  Id. at EFO 08599.  In response to eForce's request regarding access to Bank of America's test environment, the email states that Bank of America is "[s]till determining when and how our test environment will be made

**United States District Court**
For the Northern District of California

1   available to you for the XML process."  Id.  On November 16, 2007,

2   Ravindra Pande sent Weinthaler an email expressing his surprise

3   regarding "delays which have apparently occurred at BofA with

4   respect to their previously communicated timelines."  Ravindra

5   Pande Dep. Ex. 9 ("Nov. 16, 2007 Email") at EFO 08887-88.

6       The problem for eForce is that there is no evidence showing

7   that Bank of America's failure to begin production support for XML

8   messages in the October 2007 timeframe constituted the breach of a

9   contract with eForce.  The Court struggles to understand how these

10  emails can be construed as giving rise to a contract.  Where is the

11  offer or an acceptance of that offer?  eForce attempts to portray

12  its August 10, 2007 email as an acceptance of Bank of America's

13  offer made during the July 27, 2007 conference call.  Opp'n at 6-7,

14  13-14.  This contention is without merit.  "[T]erms proposed in an

15  offer must be met exactly, precisely and unequivocally for its

16  acceptance to result in the formation of a binding contract."

17  Panagotacos v. Bank of America, 60 Cal. App. 4th 851, 855 (Ct. App.

18  1998) (quoting Apablasa v. Merritt & Co., 176 Cal. App. 2d 719, 726

19  (Ct. App. 1959).  Having carefully reviewed the August 10, 2007

20  email, it cannot be construed as an acceptance of a Bank of America

21  offer.  The email states eForce's understanding that Bank of

22  America would begin production support for the XML format "in the

23  October 2007 timeframe."  Aug. 10, 2007 Email at EFO 08882.  While

24  this may have been eForce's understanding, Bank of America

25  responded at the end of August that they were "[s]till determining

26  when and how our test environment will be made available to you for

27  the XML process."  Aug. 29, 2007 Email at EFO 08599.  There is

28  nothing to show that eForce and Bank of America mutually consented

13

to definite contract terms either during the July 27, 2010 conference call or in the emails exchanged subsequent to that call. Accordingly, the Court GRANTS summary judgment in favor of Bank of America with regard to eForce's claim for breach of contract.

### C.   <u>Breach of Covenant of Good Faith and Fair Dealing</u>

The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, because the covenant is an implied term in the contract.   <u>Foley v. Interactive Data Corp.</u>, 47 Cal. 3d 654, 683-84 (1988); <u>Gruenberg v. Aetna Ins. Co.</u> (1973) 9 Cal. 3d 566, 577 (1973).   Here, and as explained above, there was no contract between eForce and Bank of America.   <u>See</u> Part IV.B, <u>supra.</u>   Therefore, the Court GRANTS summary judgment in favor of Bank of America with regard to eForce's cause of action for breach of the implied covenant of good faith and fair dealing.

### D.   <u>Intentional Interference with Contract</u>

Under California law, "[t]he elements of a cause of action for intentional interference with contract are: (1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."   <u>Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.</u>, 106 Cal. App. 4th 1219, 1239 (Ct. App. 2003); <u>see</u> <u>also</u> <u>Pacific Gas & Electric Co. v. Bear Stearns & Co.</u>, 50 Cal. 3d 1118, 1126 (1990).

In the Complaint, eForce alleges that:

> Bank of America knew that eForce had an

agreement with UCOP to provide and deploy ITOPS
with rules and functionality designed to UCOP's
needs and specifications.   Bank of America
further knew that eForce could not provide UCOP
with the ITOPS system required by UCOP unless
and until ITOPS adopted and integrated a
messaging interface that was supported by Bank
of America.

Compl. ¶ 22.  eForce alleges that Bank of America's failure "to

provide eForce with a full test environment at anytime during

Fourth Quarter 2007" interfered with the contract between eForce

and the University.  Id. ¶¶ 26-28.

There is no evidence to support eForce's claim that Bank of

America intentionally interfered with eForce's contract with the

University.  On September 26, 2007, there was a meeting between

Bank of America and the University "to discuss the University of

California's desire to become an XML pilot client."  Simas Dep. Ex.

21 ("Sept. 26, 2007 Email") at BOA 05753.  "Piloting" means the XML

format was being developed and tested with a particular client.

Simas Dep. at 50:6-53:2.  The email states "[w]e have not locked

down payment types, countries, telecom, target start and end dates

yet for UC."  Sept. 26, 2007 Email at BOA 05753.

On September 28, 2007, Bank of America emailed Nair of eForce

"regarding when we'd be ready to start testing with you for the XML

implementation," and stating that Bank of America "would like to

lock down some specifics."  Ravindra Pande Dep. Ex. 8 ("Emails") at

EFO 42812.  eForce responded that early First Quarter 2008 was the

goal for full production status.  Id. at EFO 42814.[7]

---

[7] The email states "Early First Quarter 07" but the context makes
it clear that this was a typographical error and that Nair meant
Early First Quarter 2008.  See also Mot. at 9 n.5.

15

By mid-November, eForce was concerned about the lack of progress on the XML project and therefore the parties arranged a November 16, 2007 conference call.  Ravindra Pande Dep. at 120:4-121:25.  During the call, eForce was still hoping to get into parallel production by the end of 2007.  Id. at 122:1-17.  After the call, Ravindra Pande sent Bank of America an email recapping "eForce's understanding of the major points we discussed on the call Friday regarding both the current status and the approach BofA and eForce agreed to adopt in order to attempt to provide UCOP an Integrated Treasury Operations (ITOPS) product release in December."  Id. Ex. 11 ("Nov. 19, 2007 Email") at EFO 07568.  eForce's understanding was that "BofA will have a test environment ready by December 15, 2007 in which UCOP can test domestic wire and ACH transactions.  BofA will have a test environment ready by January 15, 2008 in which UCOP can test international wire and international ACH transactions."  Id. at EFO 07569.

On November 27, 2007, Doug Carlson ("Carlson"), a Senior Vice President at Bank of America, sent the Bank of America XML project team an email stating:

> I need to get us together to confirm the bank's commitment to piloting XML payments with the University of California and make sure that we have appropriate resources  to meet their aggressive timeline.  The UC needs to have the wires and ACH payments tested and operational by December 31, 2007 when the majority of their vendor (eFORCE) resources will roll off the project.  After, 12/31/2007, they will maintain minimal resources for follow-up issues and to complete the FX payments when that functionality is available.  With our one XML implementation resource (Heidi) out all this week for training and Christmas looming, I'm concerned that the project is already in danger.  We either need to insure that we can meet their timeline, or we need to consider

16

**United States District Court**
For the Northern District of California

1                    canceling the XML pilot (which will be

                   embarrassing and possibly damaging to our

2                    relationship with the UC).

3 Simas Dep. Ex. 28 ("Carlson Email") at BOA 00426. By December 20,

4 2007, it was clear to Bank of America employees that they were not

5 going to have the XML project completed by the end of the year.

6 Docket No. 39 ("Pl.'s Errata and Clarification of Exhibits") Ex. 30

7 ("Dec. 20, 2007 Email") at BOA 83746. On January 4, 2008, Midkiff,

8 a Client Fulfillment Manager at Bank of America, emailed a timeline

9 anticipating that the XML project would be in production in March

10 2008. Reidy Decl. Ex. E ("Midkiff Dep.") Ex. 67 ("Jan. 4, 2008

11 Email"). On March 4, 2008, Chu, a Bank of America project manager,

12 told Midkiff that the March 4, 2008 production target date had been

13 met, although it was also anticipated that the University and

14 eForce would continue testing through July. Id. at 112:8-113:12.

15      On January 7, 2008, eForce and the University signed a

16 contract. See UC Banking Services Agreement at EFO 42894-42903.

17 While representatives of eForce may have been "discussing with UCOP

18 representatives the parameters of the final agreement" since June

19 2007, the contract was signed on January 7, 2008. P.K. Pande Decl.

20 ¶ 9. Under the terms of the contract, the University agreed to pay

21 eForce $100,000 for the ITOPS software. UC Banking Services

22 Agreement Part I § 1. Concerning deployment, the contract

23 provides:

24                    The University and eForceglobal have agreed

                   that deployment of the system will be completed

25                    for an amount not to exceed $600,000.

                   Eforceglobal has submitted invoices for its

26                    incurred deployment expenses of $600,000. The

                   University will pay eForceglobal 90% of the

27                    $600,000. The University agrees to pay

                   eForceglobal for the deployment as it has been

28                    delivered and is being tested.

United States District Court
For the Northern District of California

1  <u>Id.</u> Part I § 2.  The contract also provides for a monthly

2  subscription fee:

3          The University agrees to pay eForceglobal
           $75,000 starting December 1, 2007, and at the
4          beginning of each month that the system is
           placed in parallel production testing.  Upon
5          mutual agreement, when both the University and
           eForceglobal concur that the software and the
6          operations are in such condition as to warrant
           the end to parallel production, the 60 month
7          subscription agreement will commence.

8  <u>Id.</u> Part I § 3.  The subscription agreement provides that the

9  University will pay eForce $75,000 per month for the first two

10  years, $80,000 per month for the third year, and $85,000 per month

11  for the fourth, fifth, and sixth year.   <u>Id.</u> Part I § 5.

12      There is no evidence to support eForce's claim that Bank of

13  America intentionally interfered with this contract.  There is

14  nothing to show that Bank of America's delays associated with the

15  XML format and integrating ITOPS into their system were an

16  intentional effort to interfere with eForce's contract with the

17  University.  Indeed, Ravindra Pande testified that eForce has no

18  evidence that anyone at Bank of America was out to get eForce or

19  had some motive to intentionally delay the project.  Ravindra Pande

20  Dep. at 132:17-133:11.  As noted by this deponent, it is hard to

21  see how intentionally delaying the XML project would have served

22  Bank of America's interests because the University was Bank of

23  America's customer.  <u>Id.</u> at 133:5-7.

24      Furthermore, there was no interference or disruption of the

25  contract.  As required by the contract, Bank of America paid eForce

26  $100,000 for the ITOPS software, <u>id.</u> at 53:8-17, $540,000 for

27  deployment expenses, <u>id.</u> at 64:22-65:3, 66:1-3, and Bank of America

28  began paying the monthly subscription fee of $75,000 in December

**United States District Court**
For the Northern District of California

2007, <u>id.</u> at 67:22-68:4.  The University is currently in the midst
of the sixty-month subscription agreement with eForce, and the
University is current on its payments.  <u>Id.</u> at 69:1-9.  The
contract provides that Bank of America would pay eForce for the
deployment of the software "as it has been delivered and is being
tested."  UC Banking Services Agreement Part 1 § 2.  Ravindra Pande
confirmed that the University was using and testing the software
when the contract was signed on January 7, 2008.  Ravindra Pande
Dep. at 66:3-19.  P.K. Pande testified that "[b]y December 1st of
2007, which is within Q4 -- around December 1st, beginning of
December – we were live in a production environment."  Reidy Decl.
Ex. F ("P.K. Pande Dep.") at 75:5-7.  He testified that, before the
end of the Fourth Quarter 2007, eForce had completed all of the
material steps outlined in a Statement of Work agreed to by the
University and eForce.  <u>Id.</u> at 72:18-77:24.

Assuming the truth of eForce's allegations that Bank of
America misrepresented that it would provide a full test
environment for eForce before the end of 2007, or that ITOPS would
be integrated with Bank of America's system by then, these
misrepresentations did not result in a breach or disruption of
eForce's contract with the University.  The contract, signed on
January 7, 2008, explicitly acknowledges that the software was
being tested at that time.  <u>See</u> UC Banking Services Agreement Part
1 § 2 ("The University agrees to pay eForceglobal for the
deployment as it has been delivered and is being tested.").  eForce
has received and is receiving the benefit of its bargain with the
University: eForce delivered the software, eForce has received all
payments due from Bank of America, and eForce continues to receive

**United States District Court**
For the Northern District of California

subscription payments.  Ravindra Pande Dep. at 53:8-17, 64:22-65:3,
66:1-3, 67:22-68:4, 69:1-9.  There is no genuine issue of material
fact that the contract has not been breached or disrupted.
Therefore, eForce cannot prevail on its claim that Bank of America
intentionally interfered with this contract.

In its Opposition, eForce contends that Bank of America's
delays associated with the XML interface "forced eForce to delay
the launch of ITOPS and [resulted in] millions of dollars in extra
development costs for ITOPS."  Opp'n at 19.  eForce asserts that a
contract existed between eForce and the University that "predated
the July 27, 2007 phone call,"  id. at 18, but eForce cites to no
evidence in support of this contention.  In support of its
intentional interference claim, eForce relies on the statement in
Pacific Gas and Electric Co., 50 Cal. 3d at 1129, that
"interference with the plaintiff's performance may give rise to a
claim for interference with contractual relations if plaintiff's
performance is made more costly or more burdensome."  Opp'n at 19.

However, when eForce and the University signed their contract
on January 7, 2008, both eForce and the University were aware that
it was taking longer than anticipated for ITOPS to be integrated
with Bank of America's system.  P.K. Pande declares that in
November or December 2007, eForce decided to maintain additional
employees on the XML project at no cost to the University.  P.K.
Pande Decl. ¶ 20.  Despite its awareness of these delays and extra
costs, eForce decided to sign an agreement on January 7, 2008,
according to which it would be paid $100,000 for the software,
$540,000 for deployment of the software, and a monthly subscription
fee starting at $75,000 for December 2007.  To date, the University

1    has made its required payments.  Hence, there has been no breach or

2    disruption of the terms of this agreement, and the Court GRANTS

3    summary judgment in favor of Bank of America and against eForce on

4    its claim for intentional interference with contractual relations.

5

6    **V.**    **CONCLUSION**

7         For the reasons stated above, the Court GRANTS the Motion for

8    Summary Judgment filed by DEFENDANT Bank of America, N.A.

9

10        IT IS SO ORDERED.

11

12        Dated:  June 24, 2010



13                                    UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California